**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TRUESTAR INVESTMENTS LTD., and WILLABETH CAPITAL CORP.,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) ) Case No. 14-CV-215-TCK-FHM |
| **LEVINSON, SMITH & HUFFMAN, P.C.,** | ) ) ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court are (1) Defendant's Motion for Summary Judgment and Brief in Support (Doc. 41); (2) Plaintiffs' Motion for Summary Judgment and Brief in Support (Doc. 53); and (3) Defendant's Motion to Exclude Evidence from Summary Judgment Record (Doc. 57).

**I.     Background**

In March 2013, Plaintiffs Truestar Investments Ltd. ("Truestar") and Willabeth Capital Corp. ("Willabeth") and non-party Secure Operations Group ("SOG") entered into an agreement with Baxter Operating Co. and Patricia Ann Blair (collectively, the "Baxters") to purchase an oil and gas lease known as the Thompson Lease, located in Wagoner County, Oklahoma for $250,000 (the "Agreement"). Under the Agreement, Truestar and Willabeth agreed to loan SOG money to develop two 8-well projects on the Thompson Lease in return for compensation for use of the funds and interest in the two 8-well programs.

Plaintiffs, both Canadian companies, were represented by William Baker ("Baker") in the transaction. Louie McAlpine ("McAlpine") represented SOG in the transaction. Defendant Levinson, Smith & Huffman, P.C. ("Defendant") is a law firm located in Tulsa, Oklahoma. Prior to this transaction, McAlpine was one of Defendant's clients. During negotiation of the deal, Baker

told Johnnie McAlpine of SOG that he wanted to send the funds to an attorney's trust account prior to closing of the deal. (Dep. of J. McAlpine, Ex. 3 to Pls.' Mot. for Summ. J., 126:19-127:9.) On March 6, 2013, Kenny Smith ("Smith"), a lawyer at Defendant's firm, e-mailed Baker the wire instructions for Defendant's trust account "per the request of Mr. Louie McAlpine of Secure Operations Group, LLC." (Ex. 11 to Pls.' Mot. for Summ. J. at 2.) Baker's e-mail in response provides, in part:

> Thanks for the wiring information. There will be two wires -- one from Truestar Investments Ltd. and another from Willabeth Capital Corporation. . . . The total of the two [wire transfers] will result in cash placed in your trust account of $250,000 which is the amount of the purchase price of the lease from Mr. Baxter. Your role in this is to ensure good title, have a sale of the lease executed and make payment and then ensure the lease is properly registered.

(*Id.* at 1.) Smith then responded: "Mr. Baker, Mr. McAlpine has not mentioned anything to me about title work. Until now I was under the impression that I was to only act as the escrow agent for the payment of the proceeds at closing." (*Id.*) Later that day, Baker and Smith further discussed the transaction via telephone call. During the call, Baker asked Smith to explain the process involved in the sale of an oil and gas lease. Smith explained the "typical transaction" and then elaborated:

> [A]nd like I said, there are some variations. Like in this case, if we're going to be acting as a fiduciary for you, what we will do: Once we get the documents prepared with your -- we will e-mail you that we have the assignment in hand, do we have your permission to release the funds. We can even scan the assignment in an e-mail it to you so you can see it. Once we get your approval, we -- we disburse the funds to the seller.

(Transcription of 3/6/13 Phone Call, Ex. 6 to Pls.' Mot. for Summ. J. at 4.)

2

On March 7, 2016, Plaintiffs wired $250,000[1] to Defendant's trust account. On March 11, 2016, Smith e-mailed Baker confirming that "title to the Lease looks good. . . . I will need your written authorization to release funds to the Baxters. I have not completed a Closing Statement yet but will e-mail to you as soon as it is done." (Ex. 4 to Pls.' Mot. for Summ. J. at 1.) That same day, Baker e-mailed Smith giving him authorization to "disburse funds from Truestar ($210,000) and Willabeth Capital ($40,000) upon execution of the Assignment by the Baxters." (Ex. 16 to Pls.' Mot. for Summ. J. at 4.) On March 12, 2013, Defendant issued the following checks from its trust account: $105,000 to Patricia Ann Blair, $70,000 to Baxter Oil Co., and $74,965 to SOG. (Ex. 13 to Pls.' Mot. for Summ. J.) Defendant contends the $74,965 was paid to SOG for operating expenses. Other than Baker's e-mail, Plaintiffs did not give Defendant a specific instruction regarding the distribution of the funds. Plaintiffs never directed Defendant to disburse funds to SOG, and Plaintiffs believed the entire $250,000 would be paid to the Baxters as the purchase price. Louie McAlpine, on behalf of SOG, told Smith how to distribute the funds. (Dep. of K. Smith, Ex. 12 to Pls.' Mot. for Summ. J., at 100:5-101:6.) Smith did not confirm the accuracy of that information with anyone else. (*Id.*)

On January 13, 2014, Baker e-mailed Smith indicating that Plaintiffs had received "no follow up report from [Smith] regarding this lease purchase nor any letter on the disposition of the entrusted funds." (Ex. 15 to Pls.' Mot. for Summ. J at 1.) Baker requested documents detailing the purchase and distribution of the funds. In response, Smith e-mailed a copy of the assignment and "copies of the 3 checks representing disbursement of the escrowed funds" to Baker. (Ex. 8 to Pls.' Mot. for

---

[1] A wire transfer charge of $35 applied, which reduced the amount in Defendant's trust account to $249,965.

Summ. J. at 1.) Smith indicated he had not previously sent the documents because SOG was Plaintiffs' "agent in this transaction." (*Id.*) Baker responded as follows:

> I note that the $250K we sent to your Trust Fund was not used only to purchase the lease from Baxters. The assignment didn't include a purchase price amount, which I now see was $75K less than the amount we were informed by Mr. McAlpine was to be used for the purchase. If the purchase price was $175K, the balance in your trust account should have been returned to us. We didn't authorize you to disburse funds to anyone other than the Baxters. How is it that SOG was paid $74,965 from Trust Funds without our consent? SOG was not authorized to act as our agent – which is why we contacted you to act on our behalf.

(*Id.*) The attached "Settlement Statement" indicates a "selling price" of $175,000. (Ex. 16 to Pls.' Mot. for Summ. J. at 5.)

On May 7, 2014, Plaintiffs filed a complaint, asserting claims against Defendant for negligence and breach of fiduciary duty arising from the transaction.[2] Plaintiffs and Defendant subsequently filed cross-motions for summary judgment on Plaintiffs' claims of breach of fiduciary duty and negligence.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint

---

[2] Plaintiffs have not sued SOG or the Baxters for fraud or any other claims related to the alleged deception of Plaintiffs regarding the purchase price. Instead, Plaintiffs have only sued Defendant.

but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### III.     Plaintiffs' Motion for Summary Judgment

#### A.     Breach of Fiduciary Duty

To prevail on their breach of fiduciary duty claim, Plaintiffs must demonstrate: (1) the existence of a fiduciary relationship; (2) a duty arising out of the fiduciary relationship; (3) a breach of the duty; and (4) damages proximately caused by breach of the duty. *F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1299 (N.D. Okla. 1998). Plaintiffs argue Defendant had a fiduciary relationship with Plaintiffs for three reasons: (1) Smith acted as the escrow agent for the transaction; (2) Defendants held funds for Plaintiffs as attorneys; and (3) Smith told Plaintiffs he was their fiduciary.

Even assuming Plaintiffs have proven the existence of a fiduciary relationship and a duty arising out of such relationship as a matter of law, questions of material fact remain as to the third element – namely, how much information Defendant knew regarding the transaction. The Court finds that questions of material fact exist regarding Defendant's knowledge of the agreed purchase price or Plaintiffs' understanding thereof. For example, Plaintiffs claim they understood "purchase price" to refer only to price Plaintiffs were paying for the lease. Plaintiffs allege they had no knowledge any of the funds were being used for improvements on the Lease. Defendant contends "purchase price" – as used in this transaction and commonly in the industry – often refers to the amount paid for a lease as well as associated improvements. This could affect whether Defendant

5

violated any duty owed to Plaintiffs. Accordingly, Plaintiffs have not demonstrated as a matter of law that they are entitled to summary judgment on their breach of fiduciary duty claim.

### B.     Negligence

To prevail on their negligence claim, Plaintiffs must prove three elements: (1) Defendant owed a duty to Plaintiffs to protect them from injury; (2) Defendant violated that duty; and (3) Plaintiffs suffered injuries that were proximately caused by Defendant's violation of a duty. *Consol. Grain & Barge Co. v. Structural Sys., Inc.*, 212 P.3d 1168, 1171 n.8 (Okla. 2014). As with their breach of fiduciary duty claim, Plaintiffs must prove Defendant breached a duty. The same questions of material fact regarding Defendant's knowledge of the transaction and the alleged breach of the duty preclude summary judgment.

### III.    Defendant's Motion for Summary Judgment

Defendant's Motion for Summary Judgment is denied for the same reasons the Court denied Plaintiffs' motion above. Specifically, questions of material fact exist regarding whether Defendant breached a duty under Plaintiffs' claims for breach of fiduciary duty and negligence.

### IV.    Defendant's Motion to Exclude Evidence

Defendant requests the Court exclude the affidavit of Dale Astle submitted by Plaintiffs in support of their Motion for Summary Judgment, because the affidavit contains inadmissible opinion testimony under Federal Rule of Evidence 704 and inadmissible expert testimony under Federal Rule of Evidence 702. The Court did not consider Astle's affidavit in ruling on Plaintiffs' Motion for Summary Judgment. Therefore, Defendant's Motion to Exclude Evidence from Summary Judgment Record (Doc. 57) is denied as moot.

## V.     Conclusion

Plaintiffs' Motion for Summary Judgment (Doc. 53) is DENIED; Defendant's Motion for Summary Judgment (Doc. 41) is DENIED; and Defendant's Motion to Exclude Evidence from Summary Judgment Record (Doc. 57) is DENIED as moot.

**SO ORDERED** this 1st day of December, 2016.

_____
**TERENCE C. KERN**
**United States District Judge**